May it please the Court. Good morning, Your Honors. This product's liability case was mishandled in the trial court and needs to be reversed. There needs to be a new trial on liability and compensatory damages, and judgment as a matter of law should be granted for Biomet on punitive damages. I'm going to start with the jury instructional error on warnings because that alone requires a new trial. As this comes to this Court, all of the elements requiring a new trial on that are now undisputed. First of all, it's undisputed that warnings are a relevant factor to a design defect claim under Iowa law. The restatement lists them as relevant. The Iowa Supreme Court, in Wright, adopted the restatement. The Iowa jury instructions list them as a relevant factor. This Court has recognized they're a relevant factor. The District Court agreed they were a relevant factor under law and plaintiffs don't dispute that on appeal. Second, it's undisputed that Biomet's proposed instruction on this accurately stated Iowa law, that warnings are a relevant factor. The District Court never disputed it. Plaintiffs didn't either. That's conceded. Third, it's undisputed that warnings were given. In fact, it was so undisputed we won summary judgment. Fourth, it's undisputed that the warnings were legally adequate. They were so good they were adequate. We won summary judgment on that. Plaintiffs have not appealed that. It is binding now. All of that leads to the standard for what a District Court must do on issuing instructions. The parties agree on this too. They agree that the jury must be instructed on all issues supported by competent evidence in the record. Here, no one argued in the District Court that there wasn't sufficient evidence to show that warnings were given because again, we won summary judgment that they were given. Plaintiffs never said, oh, if you put the warnings in the record, then we agree there's an instruction on warnings. That was never the basis. The District Court didn't. The argument always by plaintiffs and by the District Court is that warnings were irrelevant. Here's what the District Court said before opening statements. It said, the jury shouldn't even be thinking about warnings or contemplating warnings as any part of their deliberative process in this case. That's appendix page 471. It said the same thing when it denied our motions at the end of trial. It said, warnings were in no way part of this case. The court ruled on it before trial. They are irrelevant in any issue to this case. That's appendix page 25. Did the warning issue come up during the trial at all? Well, we asked repeatedly for the instructions on warnings to be given, Your Honor. But I mean, was there any testimony? Was there anything pertaining to the warnings that an instruction would have addressed based on the evidence admitted? Yes. There are two things on that, Your Honor. First of all, plaintiffs in their opening statement raised the issue of what the surgeons know. It said they were sold a bill of goods. That's at page 525 of the appendix. It said the same thing in their closing arguments. It said they were sold a bill of goods. They asked Dr. Lee what he knew in 2007, raising the warnings issue. They had their expert testify about how important it was to notify patients of risk. That's at page appendix 1091. The plaintiffs acknowledged that warnings and issues had come up. That's page appendix 1101. But here's the really important thing, Your Honor. If plaintiffs had said nothing about warnings, nothing at all, we still would have been entitled to the instruction because it's relevant under Iowa law and we gave them. In the post-trial motion, Your Honor, I quoted this. The district court at addendum 25 said they are irrelevant. Earlier in its same opinion at pages addendum 16 to 18, it spent three pages talking about whether warnings were so relevant that they precluded punitive damages as a matter of law. Three pages. It never disputed they're irrelevant. The only question is whether they're so powerful that they wiped out punitive damages. You want to know the irony? The district court knew the warnings, but the jury never did because the district court excluded it. The district court said they're irrelevant. That is wrong under Iowa law. The other side has argued, well, if the instructions didn't make it safer, the warnings didn't, then they must not have been relevant. That's not what the restatement says. And here's the quote. And here's what Biomet wanted to argue and was blocked. It said, and I'm reading from comment L of restatement section two. It says, when an alternative designed to avoid risks cannot reasonably be implemented, adequate instructions and warnings will normally be sufficient to render the product reasonably safe. Another comment says, warnings allow a person to avoid the risk by not using the product. That's comment I. So here's what we wanted to argue. It's undisputed. Biomet sold both metal on poly, what plaintiffs said is the gold standard, and metal on metal. It issued warnings about the relative risks of both of them. What it said is that, here's what we did. We couldn't make metal on metal any safer than we actually did. We made it as safe as we could. We issued warnings on the rest. That made it reasonably safe. That was the argument. It's clearly relevant under Iowa law. And the judge refused to instruct the jury on it. That's the problem here. And when you get to the question I think Your Honor went to, you know, how often did plaintiffs raise this? That goes to the issue of prejudice. Like I said, if they hadn't raised it at all, it would still be prejudicial because we were denied in a punitive damages case where the argument was that we had wantonly and willfully ignored this risk. We were denied from saying we didn't ignore it at all. We warned about it. Right? That alone is prejudice. But this Court's decision in the Why Do You Not In case says, if you're denied an instruction, there needs to be a new trial if it misled the jury or had a probable effect on the verdict. Well, sure, it did mislead the jury about Iowa law and it had a probable effect. The alternative statement is that if it was so important that the failure to give the instruction seriously impaired the party's ability to present an effective case, we were denied Can you say specifically what were you prevented from presenting? You've said it, but I want to hear it again. Yep. So we were presented from having an instruction. Our proposed instruction said this. This is in Appendix 162. The setup, you may consider the following factors and their interaction to determine whether an alternative design is reasonable and whether its omission renders the product not reasonably safe. And then we listed all the factors. One of the factors we had is the instructions and warnings accompanying the M2A Magnum. That's the law. And then the instructions saying the judge has held that the warnings were adequate as a matter of on that. I want to briefly address punitive damages here, Your Honor, because not only are we entitled to a new trial on the merits and liability, but we're entitled to judgment on punitive damages. And here's why. If we remanded on the issue of instructions, would the district court be required to use the Crawford instruction or would it be able to or would the issue of the content of that instruction still be a matter for the trial court? I think, Your Honor, that if you were to go back down. And the reason I ask is make sure that we're not setting what the instruction is supposed to be or if that is not before us. I think you can address specifically what would be an acceptable instruction. And because we proposed it and no one ever objected, I think it would be perfectly within your bounds to say this instruction is appropriate to use. I think the district court would still have discretion based on what happened at a new trial to tailor the instructions. So on punitive damages, Your Honor, the standard is willful and wanton disregard of this. And no Iowa case has ever allowed punitive damages and found that met when, number one, the defendant directly warned and gave adequate warnings of the very risk at issue. And the defendant took steps in designing the product to reduce the risk. And there was room for reasonable disagreement in the community on the risks and benefits of different products. No Iowa case has ever allowed punitive damages and all three of those are met. As far as we're aware, no other state has either. Certainly nobody cited a case. But all three of them are here, right? Warnings as a matter of law were given and adequate. That's law of the product. The district court got this wrong. The district court thought no steps had been given but plaintiff admitted it in both opening and closing. So Appendix 541, they admitted we made many changes. That's their opening. Appendix 2745, they admitted again. And of course, they did. The risk here, what happened with Ms. Nicholson is that the cup, the part that hooks onto her hip, came loose. And the warnings directly addressed that and it's undisputed that BioMet, and this is at 2248-51, is there? BioMet had added this plasma porous spray to help osteointegration on this. It had also designed the coverage arc to reduce rubbing. The plaintiff's expert admitted this was the best designed clearance to prevent rubbing on that. That's Appendix 1043. And so it did all of these things. It's undisputed to address this very risk. So it warned, it addressed it, and then it's also undisputed that the medical community thought this was a reasonable choice between metal on metal, which lasted longer and was less likely to pop out of the socket, dislocate, metal on poly, which didn't last as long as you dislocate but didn't have the same metal on metal issues. That was the choice. But wasn't part of the defect here unrelated to the physical functioning but related to the metal? Yeah, that's the ion problem. And the problem that led to is when the ions, one of the things that it can do is it makes it harder to attach to the bone. That was their complaint. And in addition to the things I've talked about, the M2A Magnum also had a titanium insert designed to reduce the cobalt ions coming on. So that was another design directly affected at this. But the third thing, all of this led to the point that this is what plaintiff's expert said. This is Dr. Nade. At the time of implantation, metal on metal implant was an acceptable option. That's page 1384. When the plaintiff's expert admits it, it's undisputed. So I said, there's no case, the closest cases and the best cases I think here to apply are the two John Deere combine cases from this court. One is Burke, which is a 93 case applying Iowa law. A couple of years earlier there was another one applying, it was Lockley, and it was applying Arkansas law, but the same standard. All of those cases explain that when you're directly warning of a risk, you're taking design steps to address a risk and there's room for disagreement on that. That is inconsistent as a matter of law of punitive damages. There shouldn't be any punitive damages in this case. They acted reasonably in designing it on there and it's really important not to over deter innovation here in work to design it. Counsel, even if we felt that this was a very weak case for punitive damages, what standard would we apply in taking this away from the jury? It's a pretty high standard, isn't it? It's de novo review. It says no reasonable jury could meet the standard. That's it. The standard is willful and wanton disregard. You have to find that no reasonable jury could have returned a verdict containing punitive damages. That's exactly right. And with that, your Honor, I'll reserve the remainder of my time for rebuttal. Thank you, Mr. Van Orn. I brought too much to the podium. Good morning. May it please the Court. Brian Gowdy on behalf of Ms. Nicholson. This is a two-week jury trial. Over 2,000 pages of transcripts, transcript Judge Williams ably managed this trial and I'm going to address in the same order that my friend did. I'm going to go over the warnings and then go over the punitive damages. On the warnings, Biomed says it, page 34, argument 1D, the district court refused to let the jury learn of and consider the magnum warnings. That's not true. Biomed decided not to present the warnings to the jury. The warnings were the instructions for use, which were pages that accompanied this product. Now, if you go back and you look at the summary judgment record, which the jury didn't see, you'll see what those warnings were. You won't find them anywhere in the trial record. They weren't proffered as an exhibit. They weren't proffered at trial. They didn't ask Judge Williams, under Rule 56 or otherwise, to tell the jury what the instructions were. What they wanted to do was have Judge Williams tell the jury what his ruling was without the content of the instructions. It'd be a little bit like saying you were adjudicated guilty of speeding without telling the jury how fast you went and where the zone was and all the other facts underlying the accident. It's just telling you what the final adjudication was. There's no evidence in this record of the warnings. And I submitted a Rule 28J letter about how you have to raise a Rule 56G argument. But wouldn't it be appropriate for the jury to be aware that there were warnings? Not without knowing why they are. And I'll try to, I'll get into that. Because this is a design defect. So it's a factor that could be relevant for the jury to consider in determining whether there was a, the product was defectively designed. And I'll try to get into some detail. But wasn't it also relevant to punitive damages? Not, I, no. Not without knowing what the content of the warnings is. All they wanted Judge Williams to do was to tell them that he had ruled the warnings were adequate. But this was not a warnings claim by the time we got to trial. It was, was the product defectively designed? And if they wanted the jury to understand what was warned about, they needed to put that into evidence. And my friend is wrong in his Rule 28J letter. He said to you the district court refused to give the instruction not because it thought the evidence on the warning should be introduced. A quote from page 25 of the district court's order denying the motion for new trial. Did your claim include allegations about the sufficiency of the warrant? The original claim that summary judgment was granted against us on, yes. So by the time we got to trial, we were left with the design defect claim. And the instruct, the pages of the instructions for use that the district judge goes through in his summary judgment order and explains why they were adequate were not presented to the jury. And he says in his order, if I could quote, the court referring to itself, Judge Williams found that including instructions would have been confusing and unduly prejudicial because it would be introducing an additional topic on which there was no evidence. So that's an abuse of discretion. Whether to, just because the instruction says something doesn't mean it's given in every case. And I would like to point out the restatements that they rely upon. Sorry, let me find my place. Okay. It says right here, comment G. This is the one they cite in their papers. It refers back to comment F, which lists all these factors that you'll find in Iowa 100.4. And then it says a plaintiff is not necessarily required to introduce proof on all of these factors. Relevance, their relevance referring to the factors will vary from case to case. So the very restatement and the Iowa comment says this. It varies from case to case. And Judge Williams heard all the evidence and he told you there was no evidence presented on warnings. And what they wanted the judge to do was to tell the jury about his ruling. That's not relevant. And here's some other reasons why it's not relevant. If you look at the standard instruction from Iowa, the reason you consider all these factors is not for the entire design defect claim. Instruction 1000.2 lists nine propositions that a plaintiff must prove. And you can, if you read our closing argument, our trial counsel went through each of those nine propositions. These factors, these list of factors, one of which, only one of which, there's a lot of them, relate simply to propositions 4, 5, and 6 of instruction 1000.2. And those three propositions deal with the reasonable alternative design. And this was a very unusual products liability case. In most products liability cases, what the plaintiff does is they come in and say, hey, you should have designed this product differently. You should have done X, Y, or Z. Here, the alternative design was Biomet's own product, the poly on metal, as well as the similar products by other manufacturers. We didn't have to go out and have an engineer come in and draw up some new design. We just said you should have stuck with the same poly on metal product that you and the rest of the industry was using. And you shouldn't have put this out without, and this is important for the punitive damages, without doing clinical testing. Counsel, let me ask you about that. I believe that testimony was from Dr. Cantor, or at least some of the testimony. Some. There was some from their own, Mr. Schroeder, their expert. I'd like to focus on Dr. Cantor's testimony. What did the MDL ruling say with regard to the, what was he permitted to testify about? Well, he was permitted to testify, Your Honor. Dr. Cantor came in as a general causation expert. And. So the reason I ask that question is it seems to me his testimony included his personal views on what's ethical and what's not, and some legal conclusions on what is criminal or not. And I was wondering if that was within the scope of the MDL ruling. I believe it was, but I also want to point out to the court that at transcript, they objected once. More importantly, was it objected to? Well, so there were three times in his testimony where Dr. Cantor said it was unethical. Three times. One time at 7, 24, 25 from transcript pages. Other times at 630, 694. They only got up and objected the last time. And it's because he added the word criminal. And as we explained in our brief, they had just kind of beat him over the head, basically accusing him of being unethical. And, you know, the trial judge is sitting there, has heard the whole testimony, has sized it all up, said he's answered the question, and let's move on. That's an abuse of discretion standard. That's not reason to reverse. I do, I just, I don't know if you had more questions on Dr. Cantor, but I think I'll get to the punitive damages given my time here. The problem with the blue brief in this case is it does not tell you the story in the light most favorable to the plaintiff. And I'm going to try to hit these as fast as I can. This is a huge trial transcript. We put some of the facts in, but I guess the number one thing I would encourage you to go back and read if you have a minute of time, as we all do, is Mr. Schroeder's cross-examination. If you go to the blue brief pages 49 and 50, where they cite the undisputed evidence on punitive damages, almost, and there's a bunch of bullets on those two pages, almost all those citations are to Mr. Schroeder's direct examination. Mr. Schroeder was the primary engineer responsible for the design of the Magnum and the other predecessor products. When he was cross-examined, though, and you won't see any citations in their blue brief to that, he admitted that he went to the 1995 consensus conference. He admits on cross-examination that the 1995 consensus conference recommended short-term and long-term clinical studies, pages 1732 and 1733. That consensus statement was admitted at Plaintiffs' Exhibit 1707 and was repeatedly brought up during the trial with multiple witnesses. And what that consensus statement said, and if I could just go back a little bit about this open debate, there were two camps. There were people who said, don't even think about putting this back on the market. It failed. We learned that in the 60s and 70s. And then there was a second camp that supported Biomet that said, let's try to put it on the market, but with proper clinical testing and other testing. And don't be confused by Biomet. They tell you we did all this testing. They're talking about mechanical testing. And Judge Smith, you already pointed it out. They did no testing on the biological effects on the human body. They treated this like they were making a piece of equipment to put in a piece of machinery. They did no clinical testing on the Magnum device before they released it. And what they tell you on the second bullet on page 49, they say Biomet, I'm talking about the blue brief, conducted a pre-market clinical study and a pre-market ion study. And they cite you to pages 1535, 1578, 1579, 1580, and the McDonald study at 4201 in the appendix. What they don't tell you about is Mr. Schroeder's Cross. And I'll refer you to pages 1683, 1684, and there's lots of others. We just couldn't, we have a word limit. And then the 8 pages I mentioned before, 1712 to 1720. First, Mr. Schroeder's asked on Cross about an IDE. An IDE is the Investigational Device Exemption study that you do to get something into a clinical study. And these questions were about the taper, which is the predecessor to the Magnum. Because it's undisputed they did no clinical study on the Magnum, even though the consensus workshop says on the third page, how should metal on metal hip implants be assessed for safety? Clinical studies, randomized clinical trials, prospective clinical trials. And then it says, short-term results won't provide any meaningful data. Long-term follow-up is necessary. This is their camp from the conference telling them they needed to do long-term clinical studies. Mr. Schroeder admitted that on Cross, what I said before. So then he's asked, did you do, with regard to the taper, because they didn't do any tests on the Magnum, the BioMet design team didn't do any specifical clinical testing on the effect of metal debris on the human body? Yes. Next page. So the IDE study of the taper did not measure metal ion levels in any way, shape, or form, correct? No, it did not measure it. Then we get to the McDonald study that they flout as what they did for a clinical study on the taper. They paid for it. McDonald did it. And here's what Mr. Schroeder admitted that he read the study in a pre-draft form, which I'd encourage you to look at, Plaintiff's Exhibit 1777. It's got his handwriting all over it, including him circling the word concerning at the end of this sentence. The markedly is concerning. What were those levels? He got asked this on Cross. This was on the taper. Compared with the preoperative evaluations, the metal and metal group had a 24-fold increase in ethyl, I can't say it, the blood cobalt, 103-fold increase in urine cobalt, a 29-fold increase in urine chromium at the two-year point. In contrast, the metal one poly had no change in any of these. He read that. He circled. He said it was concerning. But then he said, I wasn't concerned. This is what he said on Cross. I wasn't concerned. I just wanted to find out from the scientists that we paid why they were concerned. Rather than do any long-term studies at that point, which is what was said in here needed to be done in their study, they went ahead and released it on the market with no long-term studies. The jury was, I would just say I've heard a lot about no Iowa case, but I'm running out of time. I would refer you to the 1972 case from Iowa, still good law, McCarthy, the propriety of punitive damages turns on the facts peculiar to each case. This is a long-term study. It's expired. Thank you. Your Honors, on the issue of warnings, the argument that you just heard, that if warnings were to come in, you needed all the facts, was an argument that was never made below. Not once. They did not object to the content of our instructions. At all. They never said, oh yeah, warnings could be relevant, but you need all the factors. They never said that. Completely waived. The argument was, it's irrelevant. And we've shown as a matter of Iowa law why that's wrong. And that's particularly true with medical devices. I've never seen a commercial for a medical device or drug that didn't have a list of warnings as long as my arm. It's really important for the surgeons to have these products that can do a lot of good in some people, but then have the warnings and do that. That is relevant to the design. Counsel, were the warnings introduced into evidence at trial? No. Our position was, and this is, you can look at appendix page 470 and 471. Our position from the beginning of trial was, Your Honor, you should give an instruction on it. The parties should not go back and forth in evidence because you've already ruled that they are given as a matter of law, and then we should argue based on your instruction. And the plaintiffs never said, that's an inappropriate approach. If warnings are going to come in, they've got to come in through evidence. They said they're irrelevant. And the trial court said, this is what the trial court is telling us. The jury shouldn't even be thinking about warnings as any part of their deliberative process. That's appendix 471. So this turned on a relevance ruling, not a form ruling on this. And we cited in our opening brief that the right way to do this, when it's settled at summary judgment, you shouldn't fight about it again as to have the judge instruct you. Did the warnings address the specific causation arguments that were presented to the jury? Yes. Here's what the district court found at summary judgment. This is appendix 88. Biomet warned of the type of injury that allegedly occurred here. I'm reading from the order. Specifically the warnings indicate that corrosion may occur between components, that elevated metal ion levels have been reported, that metallic wear debris may initiate a cellular response and that loosening of the cup may occur. Exactly what occurred here. That's law of the case, Your Honor. That was relevant. The district judge spent three pages thinking about punitive damages. On that, you haven't heard any response to my argument that when three things are undisputed, warnings were given, design changes were made to address the risk, and it's undisputed in the community, there's room for relevant disagreement, which their expert conceded. No case has ever allowed punitive damages when all of those things are true. They're all undisputedly true here. For that reason, along with the other areas Your Honor mentioned, and the opening, the door, where we weren't ever allowed to say that our product performed just as well as the gold standard after they opened the door, and I don't have time to cover all of that. For all those reasons, Your Honor, there has to be a new trial, and it should be without punitive damages. Thank you. Thank you, Mr. Van Horten. Thank you also, Mr. Gowdy. The Court appreciates the vigorous argument that's been presented to the Court this morning, helpful in resolving the disputes in the case. We'll continue to study the materials and render decision in due course. Thank you.